IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TIMOTHY JOSEPH MOLESKI :
    Plaintiff,

v. : CIVIL NO. 09-1111

ALAN L. ROSS
    Defendant. :

**MEMORANDUM**

**Jones, J.**                                                                                                     **July 12, 2010**

**I.    Introduction**

The above-captioned matter arises from Plaintiff Timothy J. Moleski's arrest on November 30, 2006, for theft and related offenses, in violation of Pennsylvania's criminal statutes.[1] (Am. Compl. ¶ 2.) On January 11, 2007 and April 5, 2007, a preliminary hearing was conducted before the Honorable Robert F. Burke in the Delaware County Court of Common Pleas, and Plaintiff was held over for trial on all charges. (Doc. No. 19 ¶¶ 22, 27, 29.) On October 22, 2007, the District Attorney made an application, which was granted, for an entry of *nolle prosequi* in the case of *Commonwealth of Pennsylvania v. Moleski*, contending that while there was probable cause for the arrest, the State lacked evidence to prove the charges beyond a reasonable doubt. (Doc. No. 19 ¶¶ 59, 60.) On March 10, 2009, Plaintiff filed suit against

---

[1] Plaintiff was charged with: (1) Theft by Unlawful Taking or Disposition; (2) Receiving Stolen Property; (3) Misapplication of Entrusted Property and Property of Government or Financial Institutions; and (4) Dealing in Proceeds of Unlawful Activities. (Doc. No. 18-5.)

1

Defendant[2] alleging false arrest and malicious prosecution, and requesting compensatory and punitive damages. (Am. Compl. ¶¶ 31-34.) In response thereto, Defendant has filed the instant Motion for Summary Judgment and for the reasons set forth hereinbelow, said Motion will be granted.

## II. Factual Background

The facts underlying the charges against Plaintiff evolved when on February 3, 2006, the Haverford Township Public Works Department contacted the Haverford Township Police Department to report the theft of two snowplows from the Township Yard. (Doc. No. 19 ¶ 3.) Defendant, Detective Alan L. Ross, was assigned to investigate. (Doc. No. 19 ¶ 45.) The theft was subsequently reported in the local paper on February 17, 2006. (Doc. No. 19 ¶ 4.) Thereafter, on November 6, 2006, Defendant received information from a first-time confidential informant[3] who provided details about the alleged sale of the stolen plows by a Haverford Township employee. (Doc. No. 19 ¶ 5.) Based upon this tip, Defendant conducted a further investigation, which ultimately led to the identification of two men, Marc Lincoln and Michael Davidson, who had purchased the stolen plows. (Doc. No. 19 ¶¶ 6, 7.)

---

[2] The original suit was filed in the Court of Common Pleas, Delaware County, and included as defendants the Haverford Township Police Department and the Office of the District Attorney of Delaware County. (Compl. Ex. A.) However, after Defendant removed the matter to federal court on March 13, 2009, the suit was dismissed against these defendants and Plaintiff filed an Amended Complaint solely against Defendant Ross. (Doc. Nos. 10 & 13.)

[3] At Defendant's deposition, the confidential informant was revealed to be a retired police officer who was friends with Mike Giordano, one of Plaintiff's supervisors, and a neighbor of one "Michael Davidson." The informant stated that he saw Davidson filing serial numbers off of the plows. The informant never named Plaintiff in his statement to police. (Ross Dep. 23:3-3-25; 25:3-25; 26:2-22, Dec. 2, 2009.)

Defendant interviewed both men on November 10, 2006, at which time they provided Defendant with written statements. (Doc. No. 19 ¶¶ 7-9.) Lincoln stated that in November 2005[4], he was approached at a bar by a friend, Rich, who asked if Lincoln would be interested in purchasing a snow plow that a friend of his had for sale. (Doc. No. 18-7; Doc. No. 19 ¶ 7). The friend, Richard Barr, also provided a written statement on November 30, 2006, stating that he was approached by "Tim" at the bar who asked if he wanted to buy a snowplow. (Doc. No. 18-10; Doc. No. 19 ¶ 18.) Barr declined but referred Tim to Lincoln. (Doc. No. 18-10; Doc. No. 19 ¶ 18.) Barr also wrote that he knew Tim from "around" and as an employee of Cycle City[5], but denied any further relationship with Tim or knowledge of the theft or sale of the plows. (Doc. No. 18-10; Doc. No. 19 ¶ 23.)[6] Lincoln subsequently received a phone call from Tim, who had

---

[4] Plaintiff emphasizes that it was later ascertained that the stolen plows were in possession of the Township until as late as Dec. 9 or 10, 2005. (Moleski. Dep. 81:3-7, Dec. 2, 2009.) Defendant admits this and it is clear from witness testimony that none of the witnesses were sure as of the exact date of events in this action when they were interviewed approximately one year later. (Doc. No. 18-10.)

[5] Plaintiff was formerly employed by Cycle City but was terminated in 2003 for allegedly stealing merchandise and selling it on e-Bay. (Doc 19 ¶¶ 24, 37.) This Court notes that said information was not made a part of the warrant affidavit at issue herein.

[6] At the preliminary hearing, Richard Barr recanted a portion of his written statement by testifying that: ". . . I wrote Tim because that's what the officer told me his name was[.]" (Prelim. Hr'g. Tr. 10:15-16, Jan. 11, 2007; Doc. 19 ¶ 23; Doc. 20 ¶ 18.) Barr again indicated that he did not know Plaintiff's name, when he testified "He - Tim, is it - use[d] to work at Cycle City, I believe." (Prelim. Hr'g. Tr. 11:17-18, Jan. 11, 2007; Doc. 19 ¶ 18.)

In support of his Opposition to the instant Motion, Plaintiff has attached a handwritten statement by Barr, dated January 16, 2010. (Doc. No. 20, Ex. A.) In said Statement, Barr contradicts this testimony and writes: "I asked to see a photo of Tim Moleski and they [the police] refused to show a picture. I told them I knew a Tim Moleski . . . from Cycle City. I asked if that was the Tim Moleski they were referring to and they refused to answer." (Doc. 20, Ex. A, 3.) In the same statement, Barr alleges coercion on the part of Defendant. (Doc. 20, Ex. A .) Specifically, Barr states that Defendant threatened to arrest him as a co-conspirator in the theft and publish his name and that of his business in the local newspaper if he did not cooperate. (Doc. 20, Ex. A, 6-7.) Defendant denies any improper behavior and further notes that Barr's statement was issued after the close of discovery. (Doc. No. 25, 4.)

the plows. (Doc. No. 18-7,11; Doc. No. 19 ¶ 7.) The following day, Lincoln stated he again spoke by phone with Tim who provided directions to his residence where he had the plows in a green truck in the driveway.[7] (*Id.*)

Lincoln and Davidson ultimately purchased the plows for $1,500 a piece. (*Id.*) Approximately two months later, Lincoln stated he saw the report about the stolen plows in the newspaper, "got spooked," and dropped the plow off at Mario Lanza Blvd. and 84th Street in the City and County of Philadelphia. (Doc. No. 18-5 ¶4; Doc. No. 19 ¶ 7.) Davidson's written statement corroborates the circumstances of the purchase as provided in Lincoln's statement, except Davidson apparently dropped his plow behind the airport; neither plow was ever recovered. (Doc. No. 18-5 ¶¶5, 7; Doc. No. 18-7; Doc. No. 19 ¶ 9.) In addition, the Affidavit states that Davidson said that he and Lincoln scraped decals off each plow, as well as bar codes from the respective motors. (Doc. No. 18-5 ¶2; Doc. 19 ¶ 9.) Davidson's written statement does not include any information about removing decals or bar codes from the plows, and Barr testified that the plows bore no distinguishing marks. (Doc. No. 18-9; Doc. 20 ¶ 9.)

---

It has been held that an affidavit may be discounted when it "[c]ontradicts clear testimony previously given by the same witness [and is] used in an attempt to create an issue of fact in response to a motion for summary judgment." *Bear Mt. Orchards, Inc. v. Liberty Foods, Inc.*, 2007 U.S. Dist. LEXIS 96980, at *6 (E.D. Pa. Oct. 9, 2007)(internal quotation and citation omitted). As will be discussed more fully hereinbelow, Barr's statement of January 16, 2010 is of no consequence because the Arrest Warrant was issued upon probable cause, regardless of Richard Barr's statements.

[7] Phone records from December 17, 2006, which Lincoln identified as pertaining to the sale of the plows, show Lincoln was actually contacted by a Christopher Colgan. The records reveal that there was an exchange of calls that morning between Lincoln and Colgan, and between Colgan and Moleski. Lincoln denied knowing Colgan. Colgan was interviewed on January 3, 2007, and stated that he was acquainted with Lincoln, Moleski, and Barr, but denied any knowledge of the circumstances of either the theft or sale of the plows. (Doc. No. 18-11.)

4

Defendant states that Lincoln and Davidson provided directions to the home from which the plows were purchased, a residence at 621 Cheyney Road in Springfield, Pennsylvania, belonging to Plaintiff. (Doc. No. 18-7; Doc. No. 18-9; Doc. 19 ¶8.) Defendant further states that the witnesses independently verified the location and described the property and the vehicle - the green truck - which was parked in the driveway. (*Id.*) Davidson testified that he was "pretty sure" the residence on Cheyney St. was where he and Lincoln had purchased the plows. (Prelim. Hr'g. Tr. 43:6-15, April 5, 2007; Doc. No. 19 ¶ 28.) Plaintiff acknowledges that his truck had once been green, but testified that at the time of the alleged sale his truck was painted white. (Moleski Dep. 62:19.) However, Plaintiff stated his truck was painted white in October 2006, nearly a year after the alleged sale occurred. (Moleski Dep. 62:22; 84:20-21.)

On November 29, 2006, Lincoln identified Plaintiff from a photo array as the person who sold him the plows. (Doc. No. 18-8; Doc. 19 ¶ 13.) Davidson was unable to identify Plaintiff from the photo array; this information was not included in the Affidavit of Probable Cause. (Prelim. Hr'g. Tr. 23:19-23, April 5, 2007.) Based on the foregoing, Defendant swore out the Affidavit of Probable Cause on November 30, 2006, which was reviewed by the Honorable Robert R. Burke, and an arrest warrant was issued for Plaintiff. (Doc. No. 18-5; Doc. 19 ¶ 2.) Plaintiff turned himself into the police department the same day. (Moleski Dep. 90:13-16.)

In his Complaint, Plaintiff claims that Defendant: made false or misleading statements in the warrant affidavit; used a confidential informant whose identity was never disclosed, whom the police had no reason to rely on, and whose information led Defendant to question witnesses

5

whose statements were coerced[8]; and that Defendant had a preconceived notion that Plaintiff was the perpetrator. (Am. Compl. ¶¶ 7, 9, 11, 34). Plaintiff further asserts that it was "well known" that Township officials had a vendetta against Plaintiff and his father, and that Defendant misled the court when he stated in the Affidavit that each plow bore an identifying decal with a unique number, and therefore cannot prove that the plows that were stolen were the same ones purchased by the witnesses in this action. (Am. Compl. ¶¶ 6, 21, 33.) However, during his deposition, Plaintiff testified that at least some of the plows did have identifying numbers, as they needed to be attached to specific trucks that also bore corresponding numbers. (Moleski Dep. 41:3-11, 17-25; Doc. 19 ¶ 36.) In addition, Plaintiff testified that he had always had a friendly relationship with Defendant, whom he had played hockey with on a number of occasions, and had never heard that Defendant had any kind of grudge against him. (Moleski Dep. 17:4-21, 18:2-21, 19:2-10; Doc. 19 ¶ 35).

**III. Discussion**

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A motion for summary judgment will not be defeated merely because there is some factual dispute between parties; only disputed material facts that might affect the outcome of the suit will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248. (1986). "[T]he court's function is not to weigh the

---

[8] Plaintiff claims that both Lincoln and Davidson were threatened with arrest unless they cooperated and were not issued *Miranda* warnings prior to their statements.

evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (internal citations omitted). Instead,

> A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has further ruled that a "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party," and a factual dispute is "material" when it "might affect the outcome of the suit under the governing law."
>
> In considering a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." In a summary judgment motion, the moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim.

*Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.), Inc.*, 486 F. Supp. 2d 496, 506 (E.D. Pa. 2007)(citations omitted).

In the Motion for Summary Judgment presently before this Court, Defendant contends that no genuine issues as to any material facts exist, which would entitle Plaintiff to relief. Upon review of all documents submitted by both parties, this Court agrees.

### a. 42 U.S.C. §1983

#### i. Arrest

Plaintiff has alleged Defendant violated his civil rights under 42 U.S.C. §1983 by arresting and prosecuting him without probable cause. In order to establish a *prima facie* claim under Section 1983, Plaintiff must show that a state actor, under color of law, "engaged in conduct that deprived him of 'rights, privileges, or immunities' secured by the Constitution or laws of the United States." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). Section 1983 "is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal citations and quotations omitted). The analysis of a § 1983 claim requires the court to determine whether: (1) Plaintiff was seized for Fourth Amendment purposes;[9] (2) whether the seizure violated Plaintiff's Fourth Amendment rights; and (3) whether Defendant may be held liable. *Berg v. County of Allegheny,* 219 F.3d 261, 269 (3d Cir. 2000), *cert. denied*, 531 U.S. 1072 (2001).

The court in *United States v. Laville*, 480 F.3d 187 (3d Cir. 2007) noted:

> As the Supreme Court emphasized in *Draper v. United States*, there is a "'difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search.'" And, as Judge Learned Hand recognized more than sixty years ago, the "'reasonable cause' necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties."
>
> And it is reasonableness that is the central inquiry under the Fourth Amendment. "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." Probable cause exists whenever reasonably trustworthy

---

[9] The Fourth Amendment provides that people are "to be secure in their persons . . . against unreasonable searches and seizures . . . and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV.

> information or circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed by the person being arrested.

*Id.* at 193-94 (citations omitted). *See also, Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997)(noting that a court must look to the totality of circumstances to ascertain whether an officer had a reasonable belief as to probable cause). Therefore, when assessing "a [Section] 1983 claim based on false arrest [ ] without probable cause, the proper inquiry is not whether the person arrested in fact committed the offense, but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Mason v. Mahon*, 2006 U.S. Dist. LEXIS 12798, at *11 (E.D. Pa. Mar. 23, 2006)(citations omitted). As such, the fact that the District Attorney ultimately sought *nolle prosequi* of the charges against Plaintiff, is of no consequence to this Court's ultimate summary judgment determination.

Importantly, the court in *Sharrar* further noted that "although probable cause is typically a jury question, in a § 1983 action, summary judgment is appropriate when 'no genuine issue of material fact exists and where credibility conflicts are absent.'" *Id.* Upon review of the record *in toto,* this Court finds that Defendant had probable cause to arrest under the controlling standard, therefore the arrest of Plaintiff was not unlawful. Accordingly, Plaintiff's false arrest claim must fail.

Plaintiff's Complaint alleges the that Affidavit of Probable Cause contained false and misleading statements. Because the arrest warrant was facially valid, having been reviewed by a neutral judge, it is necessary that:

> [T]he plaintiff shows, by a preponderance of the evidence: (1) that the police officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a

9

warrant;" and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause."

*Wilson*, 212 F. 3d at 786-87 (citation omitted). Therefore, Plaintiff must make a substantial preliminary showing of the falsity or reckless disregard for the truth of the statements relied upon for probable cause, along with corresponding offer of proof. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). In doing so, he "[m]ust challenge the affiant's state of mind as well as the truth of the affidavit." *United States v. Harrison*, 400 F. Supp. 2d 780, 786 (E.D. Pa. 2005).

In assessing an arrest warrant, the court must be mindful that:

> "[P]robable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." The reviewing court should give "great deference" to the Magistrate Judge's determination of probable cause. A finding of probable cause must be upheld, even where the reviewing court would have reached a different conclusion in a particular case, so long as the determination was consistent with the minimal substantial basis standard.

*United States v. Yokshan*, 658 F. Supp. 2d 654, 663 (E.D. Pa. 2009)(citations omitted).

In *Wilson*, the court discussed the different standards for statements omitted or asserted in an affidavit of probable cause by an officer and under what circumstances such statements are material. In that case, the plaintiff was arrested and incarcerated for theft based on a warrant affidavit in which the arresting officer: (1) did not tell the judge that there was a significant height differential between the victims' description of the suspect and the plaintiff, and neglected to mention that height was not indicated on the photo array; (2) did not tell the judge that one of the two victims had not identified plaintiff from the photo array; and (3) did not inform the judge of apparent differences between the ethnicity of the defendant and the other individuals presented in the photo array. *Wilson*, 212 F.3d at 788. The court stated that "omissions are made with

reckless disregard for the truth if an officer withholds information that 'any reasonable person would [know] . . . was the kind of thing a judge would wish to know.'" *Id.* (citation omitted). Omissions are material if they are highly relevant to probable cause. *Id.* As such, it was determined that the significant height differential and the fact that a victim did not identify the defendant were "things a judge would wish to know" and therefore constituted unreasonable omissions.

On the other hand, assertions are material, even for minor details, and are not measured by relevance but rather by the officer's "demonstration of willingness to affirmatively distort the truth." *Id.* "An assertion is made with reckless disregard when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* (internal citation and quotations omitted).

If it is established that omissions or assertions were made with reckless disregard, then the court must determine whether such statements were "material, or necessary, to the finding of probable cause." *Id.* (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)). In order to make this determination, the court excises the offending statements from the affidavit and then looks to see if the "corrected warrant affidavit would establish probable cause." *Id.* If it does, then summary judgment is appropriate. *Id.* In *Wilson*, although the court found that certain omissions and assertions had been made with reckless disregard, notably the officer's failure to include the fact that one witness had not identified the plaintiff, the court affirmed a grant of summary judgment for the officer, finding that even if there had not been misrepresentations, the plaintiff would have been arrested. *Id.*

Pursuant to this standard, Defendant's failure to notify the judge that Davidson had been unable to identify Plaintiff is not a material misstatement or omission that would preclude summary judgment. This is so because the other factors presented to Judge Burke, in and of themselves, established probable cause. Moreover, Plaintiff has not presented any evidence that Defendant made any false assertions in the warrant affidavit. Although Plaintiff indicates that Defendant's statements about identifying numbers on the plows were fabricated, Plaintiff's own testimony contradicts this assertion. (Moleski. Dep. 41:3-11, 17-25.)

In sum, Plaintiff has provided no evidence to establish that Defendant entertained serious doubts as to the truth of such statements. However, this Court must also assess Plaintiff's contention that Defendant coerced the statements contained in the warrant affidavit, which, if proven would defeat probable cause.

In support of his unlawful arrest claim, Plaintiff asserts that witnesses: (1) were threatened with arrest unless they made the inculpatory statements against him; (2) were not Mirandized during their interviews; and (3) that Defendant had a preconceived notion as to Plaintiff's guilt.

First, Plaintiff has provided no evidence that Lincoln and Davidson were coerced by Defendant, and neither witness has made such a claim. While Plaintiff notes that both Davidson and Barr testified that Defendant told them Plaintiff's name, this does not defeat probable cause because if struck from the warrant affidavit, Lincoln's positive identification of Plaintiff, combined with the other averments contained therein, would have been sufficient to establish probable cause. Although Davidson testified that he was 'pretty sure' the house he pointed out to the defendant was the house where he purchased the plows, such a statement does not

contradict the assertion that he and Lincoln led Defendant to Plaintiff's residence. Small discrepancies in detail, such as the difference between Defendant testifying that witnesses were sure that Plaintiff's residence was where they purchased the plows as opposed to 'pretty sure,' do not defeat probable cause. *Wilson*, 212 F.3d at 791. This is also true for statements concerning the color of Plaintiff's truck, to which Plaintiff himself contributed to the contradiction. (Moleski Dep. 62:19,22; 84:20-21.)

Secondly, Plaintiff asserts that none of the witnesses testifying against him were Mirandized, and that this goes toward proving Defendant's use of coercion in obtaining their statements. However, the record indicates that none of the testifying witnesses were in custody at the time they gave their statements. The Supreme Court has held that only where a defendant is in a custodial situation is a *Miranda* warning necessary. *See generally Miranda v. Arizona*, 384 U.S. 436 (1966). Moreover, voluntary utterances are admissible even without a *Miranda* warning. *See, e.g. United States v. Barnes,* 2005 U.S. Dist. LEXIS 16200, at **10-11 (E.D. Pa. Aug. 8, 2005), *aff'd.* 263 Fed. Appx. 208 (3d Cir. Pa. 2008). Although it is possible for a non-custodial interview to amount to an interrogation likely to elicit incriminating statements, a court must look to the totality of the circumstances surrounding the interview to ascertain whether a suspect would perceive his interview as an interrogation. *See United States v. Overington,* 2007 U.S. Dist. LEXIS 81184, at **10-11 (E.D. Pa. Oct. 24, 2007). The test for whether a person is in custody and whether or not *Miranda* warnings are necessary, depends upon "[w]hether 'a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.'" *Id.* at *10. *See also, United States v. Leese,* 176 F.3d 740, 743 (3d Cir. 1999).

Here, the witnesses in question were in the comfort of Lincoln's residence. The evidence, including the fact that Lincoln called Davidson and asked him to come over and talk to the police, demonstrates the voluntariness of the statements made, and Defendant has stated under oath that he informed each witness that they were not under arrest. (Ross Dep. 36:14-19.) Barr's recantation of his previous statement and allegations that Defendant threatened his business and reputation also do not defeat probable cause because his statement was not relied upon in swearing out the Affidavit. Further, Plaintiff has produced no evidence of Defendant's alleged preconception of Plaintiff's guilt, nor of any personal vendetta against him. In fact, Plaintiff's own deposition states that he and Defendant had a friendly relationship for years prior to Plaintiff's arrest in this matter. (Moleski. Dep. 17:4-21, 18:2-21, 19:2-10; Doc. 19 ¶ 35.)

Although Plaintiff maintains that Defendant had no evidence that the plows the witnesses purchased were the ones stolen from the Township, or that he was in any way involved with the theft, review of the record demonstrates otherwise. Again, the standard for probable cause is not the same as beyond a reasonable doubt. *Orsatti*, 71 F.3d at 482-83.

In further support of his argument, Plaintiff claims that Defendant's use of a confidential informant who had never previously worked with police was improper, as Defendant had no reason to rely on that person's credibility. However, the Third Circuit has rejected a similar claim by a plaintiff in a § 1983 action. *See United States v. Stearn,* 597 F.3d 540, 555 (3d Cir. Pa. 2010)("A magistrate may issue a warrant relying primarily or in part upon the statements of a confidential informant, so long as the totality of the circumstances gives rise to probable cause."); *Skunda v. Pennsylvania State Police*, 47 Fed. Appx. 69 (3d Cir. 2002)(holding that probable cause to arrest existed despite the use of an untested, first-time confidential informant against

14

whom there were pending criminal charges, and despite the fact that the officer did not include the fact that the informant was untested in the affidavit of probable cause).

While the Supreme Court has held that "an informant's veracity, reliability, and basis of knowledge are all highly relevant" to a determination of probable cause, it also noted that these elements should not be understood "as entirely separate and independent requirements to be rigidly exacted in every case." *Illinois v. Gates*, 462 U.S. 213, 230 (1983)(reaffirming a totality of circumstances approach to determinations of probable cause, and holding that probable cause existed where the officers independently corroborated an anonymous tip). *See also, United States v. King*, 366 F. Supp. 2d 265, 273 (E.D. Pa. 2005)(noting that if police can independently corroborate a tip from a confidential informant, the information received from said informant can form the basis for probable cause to arrest)(citations omitted), *aff'd,* 182 Fed. Appx. 88 (3d Cir. Pa. 2006).

Here, where the confidential informant (who was later ascertained to be a neighbor of Davidson and who knew Plaintiff's supervisor), provided information that Defendant later corroborated, no impropriety exists. The informant was a citizen who witnessed a suspicious act and reported the act to police. There is no evidence that the informant in this instance was motivated by anything other than civic concern. More importantly, the information provided by said informant was independently corroborated as discussed more fully hereinabove, thereby providing a solid basis for a finding of probable cause.

In light of the foregoing, Defendant is entitled to summary judgment regarding Plaintiff's allegations pertaining to an unlawful arrest.

### ii.     Malicious Prosecution

In order to prove malicious prosecution in the context of a § 1983 claim involving allegations of a Fourth Amendment violation, Plaintiff must demonstrate that:

> (1) [T]he defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. Pa. 2009)(internal quotations and citation omitted).

This Court's review of Plaintiff's Response to the instant Motion reveals a complete failure to specifically address any of the foregoing elements.  Moreover, this Court's independent review of the record demonstrates that Plaintiff's allegation of malicious prosecution necessarily fails by reason of his inability to overcome the first, third and fourth elements.

First, Plaintiff has failed to demonstrate that Defendant initiated the underlying criminal proceeding.  As the court in *Stango v. Rodden*, 2001 U.S. Dist. LEXIS 15728 (E.D. Pa. Aug. 21, 2001) discussed,

> In most circumstances, a plaintiff cannot proceed against a police officer for a claim of malicious prosecution because a prosecutor, not a police officer, 'initiates' criminal proceedings against an individual.  However, a police officer may be held to have "initiated" a criminal proceeding if he knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion, [because] . . . in such cases, an intelligent exercise of the . . . [prosecutor's] direction becomes impossible, and a prosecution based on the false information is deemed procured by the person giving the false information.

*Id.* at ** 11-13.

Plaintiff herein has provided absolutely no evidence to show that Defendant "knowingly provided false information to the prosecutor" or "interfered with the prosecutor's informed discretion." *Id.*

As discussed more fully in Section III (a)( I) hereinabove, the third element of probable cause has been established. With regard to the fourth element, Plaintiff must show that Defendant acted with malice or for some reason other than bringing Plaintiff to justice, and this he cannot do. Although Plaintiff alleges that Defendant had a preconceived idea that Plaintiff was guilty and alleges a conspiracy against him by the Township's commissioners and members of the police department, he offers no competent evidence to support the allegations and instead relies on uncorroborated hearsay. Although malice may be proven by evidence of coercion, Plaintiff offers no evidence of any kind to demonstrate same. *See Hayes v. City of Philadelphia*, No. Civ. A. 04-544, 2005 U.S. Dist. LEXIS 27916 at *20 (E.D. Pa Nov. 15, 2005).

For Plaintiff to prevail on his malicious prosecution claim, he must establish each of the five elements. *Kossler,* 564 F.3d at 186. Plaintiff has not done so.[10] Accordingly, summary

---

[10] With regard to the second element of favorable termination,

> A plaintiff may attempt to indicate his innocence by demonstrating that his prior criminal proceeding terminated in one of the following ways: "(a) a discharge by a magistrate at a preliminary hearing, or (b) the refusal of a grand jury to indict, or ( c) the formal abandonment of the proceedings by the public prosecutor, or (d) the quashing of an indictment or information, or (e) an acquittal, or (f) a final order in favor of the accused by a trial or appellate court."

*Kossler,* 564 F.3d at 187 (citations omitted). Viewing the facts in a light most favorable to Plaintiff, the second element will be deemed satisfied for purposes of the instant assessment, by reason of the *nolle prosequi* that was ultimately entered in Plaintiff's underlying criminal case.

With regard to the fifth element, Plaintiff must establish that he suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. In view of

judgment must be granted.

      b.      **Qualified Immunity**

Defendant herein has raised the affirmative defense of qualified immunity. Because the information in Defendant's possession at the time he made the warrant application would likely lead a reasonable officer to believe he had probable cause to lawfully arrest Plaintiff, qualified immunity is appropriate here.

In assessing said defense in a case such as this, the inquiry is "whether a reasonable officer could have believed that his or her conduct was lawful, in light of clearly established law and the information in the officer's possession." *Sharrar*, 128 F.3d at 826. In that same vein, a police officer performing discretionary functions is entitled to the privilege of qualified immunity under certain circumstances, which "can serve as a shield from suit." *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005). Because qualified immunity is a shield from suit and "[n]ot simply from trial, the district court should resolve any immunity questions at the earliest possible stage of the litigation." *Orsatti*, 71 F.3d at 483. The purpose of qualified immunity is to protect public officials "from undue interference with their duties and from potentially disabling threats of liability." *Id.* (internal citations omitted). The privilege may be overcome if the officer violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Sharrar*, 128 F.3d at 826 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). If a clearly established right is found, then the inquiry becomes "whether a reasonable officer could have believed that his . . . conduct was lawful, in light of the clearly established law and the

---

the fact that he was required to participate in a preliminary hearing before the prosecutor ultimately sought *nolle prosequi,* this Court cannot conclude that the said element has not been satisfied. In any event, Plaintiff's failure to satisfy the remaining three elements, precludes relief.

information in the officer's possession." *Id. See also*, *Orsatti*, 71 F.3d at 483.

The right to be free from arrest without probable cause is clearly an established constitutional right, so the inquiry in this case is whether Defendant's actions in arresting Plaintiff were objectively reasonable. *Orsatti*, 71 F.3d at 483. The Supreme Court has held that "only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the officer lose the shield of immunity." *Id.* (internal citations and quotations omitted). In this case, Defendant's actions in swearing out the warrant affidavit and the subsequent arrest of Plaintiff cannot be deemed objectively unreasonable. The arrest was predicated on an Affidavit that contained witness statements identifying Plaintiff as the perpetrator and was reviewed by a neutral decision-maker.[11]

Absent a showing of coercive behavior on the part of Defendant, summary judgment is appropriate on this issue, as there is no genuine issue of material fact established by Plaintiff's assertions. *See Orsatti*, 71 F.3d at 484, see also, *Sharrar*, 128 F.3d at 827-28 (holding that the reasonableness of an officer's actions is a question of law for the court, and that summary judgment is appropriate if the court finds the officer's actions reasonable). Although Plaintiff avers improper and coercive behavior on the part of Defendant which, if proven, would defeat any claim to qualified immunity, he has not provided a scintilla of competent evidence to support his assertions. Plaintiff cannot defeat Defendant's motion for summary judgment by simply re-stating the allegations of his Complaint. Instead, he must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti*, 71 F.3d at 484 (quoting *Celotex v. Catrett,* 477 U.S. 317, 322 (1986)). Inasmuch as Plaintiff has not done so, summary judgment

---

[11] Probable cause was re-established at the preliminary hearing.

must be granted.

**IV.    Conclusion**

The record in this case clearly demonstrates that there exists no genuine issue as to any material fact.  Accordingly, Defendant is entitled to judgment as a matter of law.

An appropriate Order follows.

BY THE COURT:


/s/  C. Darnell Jones  II      J.